**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES for the use and benefit of GEM PLUMBING & HEATING CO., INC., Plaintiff** | : | |
| **vs.** | : | **C.A. No. 06-24T** |
| **M.A. MORTENSON COMPANY and CHUBB GROUP OF INSURANCE COMPANIES, Defendants** | : | |

**MOTION OF DEFENDANT, M.A. MORTENSON COMPANY, TO STAY THE PENDING MATTER SUBJECT TO ARBITRATION**

Now comes the Defendant, M.A. Mortenson Company (Mortenson), and moves this Court to stay the pending matter as there is an arbitration clause between the parties, which requires arbitration in Minnesota. Mortenson relies upon the Memorandum of Law attached hereto in support of its Motion to stay the present proceedings.

M.A. Mortenson Company
By its attorney,

Joseph J. Reale, Jr.-#3158
Joseph J. Reale, Jr., Ltd
30 Kennedy Plaza, Suite 400
Providence, RI 02903
Tel: (401) 453-9900
Fax: (401) 453-9917

Dated: May 4, 2006

**CERTIFICATION**

To:
Nicholas J. Gorra, Esq.
Gordon, Muir & Foley
10 Columbus Boulevard
Hartford, CT 06106

Everett A. Petronio, Sr., Esq.
1239 Hartford Avenue
Post Office Box 19040
Johnston, RI 02919

I hereby certify I caused to be served on the above-named counsel of record a true copy of the Motion and Memorandum of Law on May 4, 2006.

Marianne C. Martin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES for the use and benefit of GEM PLUMBING & HEATING CO., INC., Plaintiff** | : | |
| **vs.** | : | **C.A. No. 06-24T** |
| **M.A. MORTENSON COMPANY and CHUBB GROUP OF INSURANCE COMPANIES, Defendants** | : | |

**MEMORANDUM IN SUPPORT OF M. A. MORTENSON COMPANY'S MOTION TO STAY LITIGATION PENDING ARBITRATION**

Defendant M. A. Mortenson Company ("Mortenson") submits this memorandum of law, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, in support of its Motion to Stay Litigation Pending Arbitration between the parties.

**INTRODUCTION**

This court should stay this litigation pending arbitration because Gem Plumbing and Heating Co., Inc. ("Gem") is required to arbitrate its dispute with Mortenson in Minneapolis, Minnesota. The basis for arbitration is three identical contractual arbitration clauses in three subcontracts between Mortenson and North East Mechanical ("North East"), all of which Gem subsequently took over when North East defaulted on these subcontracts. Mortenson has filed a demand for arbitration with the American Arbitration Association and served such demand on Gem, but Gem has refused to arbitrate. Gem claims that it is not bound to the arbitration clause because it is not a signatory to the subcontracts.

While it is true that Gem is not a signatory to the subcontracts, Gem has admitted that it "took over" the subcontracts. Furthermore, Gem is currently attempting to recover money damages from Mortenson for breach of these very same subcontracts. It is both common sense and well-established law that Gem cannot reap the benefits of the subcontracts while simultaneously avoiding

the subcontracts' obligations. Because Gem has both admitted that it took over the subcontracts and is currently trying to enforce these subcontracts against Mortenson, Gem is bound by the arbitration clauses in those subcontracts. Accordingly, this Court should stay this litigation, pursuant to Section 3 of the FAA, pending the outcome of the arbitration.

## BACKGROUND

In 2003, Mortenson, a general contractor, entered into separate contracts with the Department of the Navy ("Navy") for repairs and alterations to three buildings at the Newport Naval Station in Newport, Rhode Island (the "Projects"). Mortenson entered into three separate subcontract agreements, dated July 13, 2003, November 17, 2003 and November 17, 2003, (the "Subcontracts") with North East, a mechanical subcontractor. Under each of the Subcontracts, North East was to provide and install plumbing, heating, and air conditioning systems in each of the respective Projects.

Each of the Subcontracts provided for arbitration of disputes in Minneapolis, Minnesota at Mortenson's sole discretion. The Subcontracts each provide:

> 21.2 If the Contract Documents do not provide for Arbitration and if Mortenson, in its sole discretion, elects to demand Arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Subcontract, including breach thereof, shall be decided by Arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise. Arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

(*See* the Mortenson/North East Subcontracts, ¶ 21.2, attached hereto as Exhibits A, B. and C.) Each of the Subcontracts also required North East to obtain payment and performance bonds. North East obtained the required bonds (the "Bonds") from a surety named National Grange Mutual Insurance Company ("National Grange").

Not long after beginning work, North East breached each of the Subcontracts by: (1) failing to supply sufficient skilled workers, equipment, and materials of proper quality and quantity; (2)

failing to provide adequate, qualified supervision and coordination of its work; (3) failing to make timely payments for materials; (4) failing to prosecute the work with promptness and diligence; (5) causing stoppage, delay, and interference to work of Mortenson and other subcontractors; and (6) failing to develop and follow a reasonable plan of action to complete the Projects. As a consequence, Mortenson notified North East in three separate letters that North East was in breach and default of the Subcontracts. Notwithstanding such notice, North East failed to address and correct its breaches and defaults within the time specified in the Subcontracts.

By the end of March, 2005, Mortenson had notified National Grange of the default of North East on each of the Subcontracts and called upon National Grange to promptly remedy North East's defaults, complete the Subcontracts, or otherwise honor the Bonds. Shortly thereafter, Gem, a company that shares at least one of the same principals as North East and is an indemnitor on North East's Bonds for the Subcontracts, took over the Subcontracts in the capacity of a replacement contractor hired by National Grange.[1] Gem began performance of the remaining work to complete the Projects in accordance with the terms of the Subcontracts, all of such undertakings being done with the full knowledge and consent of National Grange and North East. In a June 9, 2005 letter from Gem's attorney to Mortenson's Vice President, Gem confirmed that it took over North East Mechanical's Subcontracts, stating, "As you know, the undersigned Gem Mechanical Services, Inc. ("Gem") took over a contract between M. A. Mortenson ("Mortenson") and North East Mechanical Services, Inc. for the supply of mechanical services furnished in regard to the above referenced Projects." (*See* letter dated June 9, 2005 from N. Gorra to C. Southorn, attached hereto as Exhibit D.)

Thereafter, Gem failed and refused to perform the remaining work under the Subcontracts and failed and refused to complete the Subcontracts by: (1) failing to provide adequate, qualified supervision for coordination of its work and that of its subcontractors; (2) failing to prosecute the

[1] At the time Gem took over the Subcontracts, Mortenson was not aware that Gem was an indemnitor on the Bonds. Mortenson was recently told this by Gem's counsel.

work with promptness and diligence; and (3) failing to develop and follow a reasonable plan of action to complete the Projects. As a result, Mortenson was forced to perform the work scope of North East/Gem and subsequently offset its expenses incurred in performing this work from Subcontract proceeds, as authorized by the Subcontracts. Further, Mortenson has sustained, and continues to sustain, damages in excess of the retained Subcontract proceeds, as a consequence of the respective defaults of North East, Gem, and National Grange.[2]

On January 18, 2006, Gem filed a Complaint in this Court against Mortenson and Chubb Group of Insurance Companies alleging, inter alia, a Miller Act Bond claim against Chubb and a breach of contract claim against Mortenson on the Subcontracts that Gem took over. The Complaint specifically states, consistent with Gem's prior representations, that "Gem, with permission of North East Mechanical and North East's surety and Mortenson, took over the North East Mechanical contract with Mortenson."[3]

On March 17, 2006, consistent with the arbitration provisions in the Subcontracts, Mortenson filed with the AAA and served on North East, Gem, and National Grange a demand for arbitration that designated arbitration hearings to be held in Minneapolis, Minnesota. (*See* Demand for Arbitration, dated March 17, 2006, attached hereto as Exhibit E.) Only Gem has refused to arbitrate, stating that it is not bound by the arbitration clauses in the Subcontracts, because it did not sign the Subcontracts. Mortenson now brings this motion to stay this litigation pending the arbitration, consistent with Gem's obligations under the Subcontracts.

---

[2] The work of the Subcontracts is not yet complete. Mortenson continues expend time and money on corrective work on the Projects, which will likely not be completed until some time in May, 2006.

[3] Gem's Complaint inaccurately refers to the agreement between Mortenson and North East as a single "contract," when in fact a separate subcontract was issued for each of the three buildings involved in the Project; each Subcontract contained an identical arbitration clause.

## ARGUMENT

### I. The Federal Arbitration Act Requires that Litigation Be Stayed when the Parties Have Agreed to Arbitrate.

Section 3 of the Federal Arbitration Act ("FAA") directs federal courts to stay litigation that is subject to an arbitration clause between the parties. Section 3 states, in relevant part:

> **§ 3. Stay of proceedings where issue therein referable to arbitration**
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. §3. This litigation is referable to arbitration and Mortenson hereby requests that this Court stay litigation pending the outcome of arbitration under the above statute.[4]

The issuance of such stays is routine, and is well-recognized by the First Circuit. *See, e.g., KKW Enter., Inc. v. Gloria Jean's Gourmet Coffees*, 184 F.3d 42 (1st Cir. 1999) (reversing district court's denial of Gloria Jean's motion to stay litigation, stating "Section 3 of the FAA expressly provides that if a suit is brought on an issue referable to arbitration . . . the court shall stay the matter."); *see also Commercial Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386 (1st Cir. 1993) (reversing district court's denial of Commercial Union's motion to stay litigation, stating "Section 3 of the [FAA] contains a procedure by which parties to an arbitration agreement may file a motion to stay the trial of arbitrable claims pending arbitration.").

The issue in this case is whether Gem is bound to arbitrate with Mortenson even though it did not formally "execute" the Subcontracts. As discussed in detail below, because Gem took over performance of the Subcontracts, and because Gem is currently trying to enforce those very

---

[4] Mortenson is not asking this court to compel arbitration under Section 4 of the FAA, because only the federal district court in the district in which the arbitration is to be held can compel such arbitration. *See* 9 U.S.C. § 4; *see also, e.g., Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("[W]here the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4 [of the FAA]."). If Gem continues to resist arbitration after this court stays litigation, Mortenson will move the Minnesota federal district court for an order compelling arbitration.

Subcontracts against Mortenson in this litigation, Gem is bound by the terms of the Subcontracts and, accordingly, is obligated to arbitrate with Mortenson. This Court should therefore stay this litigation pending the outcome of arbitration.

**A. Even if a Party Is Not a Signatory to a Contract Containing an Arbitration Clause, that Party Can Be Forced to Arbitrate if It Attempts to Claim the Benefits of the Contract**

While it is axiomatic that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," most courts, including the First Circuit, recognize that "nonsignatories sometimes can be obligated by, or benefit from, agreements signed by others, and these principles can apply to arbitration provisions." *McCarthy v. Azure*, 22 F.3d 351, 354-56 (1st Cir. 1994) (quotations and citations omitted).

The legal principle by which nonsignatories can be held to the arbitration clause in a contract between two other parties is a form of equitable estoppel. *See Intergen v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). Equitable estoppel applies when a nonsignatory to a contract asserts rights under the contract while simultaneously attempting to avoid obligations under the same contract. *See id.* at 145 ("[T]he doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations."); *see also Tepper Realty Co. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966) (same).

For example, in *Tepper*, the hallmark case for equitable estoppel in the arbitration context, neither plaintiffs nor defendant were signatories to the contract that contained an arbitration clause. *See Tepper*, 259 F. Supp. at 691. However, plaintiffs were attempting to enforce the contract against the defendant, while simultaneously arguing that they should not be subject to the arbitration clause of the contract. *See id.* at 692. The court disagreed:

> Surely, plaintiffs cannot claim that [defendant] is a party to the . . . contract to enforce it against [defendant] in this action and be heard to deny that it is such a party for purposes of avoiding arbitration of claims clearly within the ambit of the arbitration agreement. In short, the plaintiffs cannot have it both ways. They cannot rely on the contract, when it works to their advantage, and repudiate it when it works to their disadvantage. To permit them to do so would not only flout equity, it would

> do violence, we think, to the congressional purpose underlying the Federal Arbitration Act.
>
> . . . .
>
> . . . [B]y virtue of the arbitration provision, [defendant] is entitled to a stay of these proceedings under § 3 [of the FAA]. If Plaintiffs wish to enforce the contract against [defendant], they must seek arbitration.

*See id; see also Intergen*, 334 F.3d at 145-46 (stating that estoppel applies in "cases that involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract"); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993) ("Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, this court has held that the lack of a written arbitration agreement is not an impediment to arbitration….[T]here are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration.").

Thus, even non-signatories can and will be held to the arbitration clause in a contract if they have embraced that contract or are trying to enforce the terms of that contract. Here, Gem, an indemnitor on the Bonds for these very Subcontracts, both specifically embraced the Subcontracts and is attempting to enforce the Subcontracts against Mortenson in this litigation. Gem must therefore arbitrate its claims against Mortenson, and accordingly, this litigation should be stayed.

**B. Gem Has Embraced the Subcontracts and Is Seeking to Benefit From Them.**

Like the *Tepper* case cited above, Gem is attempting to both enforce the Subcontracts against Mortenson and avoid the arbitration clauses of those Subcontracts. This Court should not allow Gem to simultaneously reap the benefits of the contract and avoid its obligations—"in short, the plaintiff[] cannot have it both ways." *Tepper*, 259 F. Supp. at 692. Also, there is no question that Gem both "embraced" the Subcontracts in question ***and*** seeks to derive direct benefits from those Subcontracts, which renders the arbitration clauses enforceable. *See InterGen*, 334 F.3d at 145-46.

First, Gem embraced the Subcontracts. As stated above, in a June 9, 2005 letter from Gem's attorney to Mortenson's Vice President, Gem confirmed that took over North East Mechanical's Subcontracts, stating:

> As you know, the undersigned Gem Mechanical Services, Inc. ("Gem") took over a contract between M. A. Mortenson ("Mortenson") and North East Mechanical Services, Inc. for the supply of mechanical services furnished in regard to the above referenced Projects.

(Ex. D.)

Likewise, Gem's Complaint in this action unequivocally states that Gem took over the Subcontracts. In paragraphs 4 and 5 of its Complaint in this litigation, Gem states:

> On or about July 13, 2003, North East Mechanical entered into a contract with Mortenson wherein North East Mechanical agreed to install plumbing, heating and air-conditioning in a number of separate buildings for the United States Navy on a construction project known as "Newport Navy Base-Buildings 36, 347 & 360. . . .
>
> . . . .
>
> On or about November 1, 2004, ***Gem, with the permission of North East Mechanical and North East's surety and Mortenson, took over the North East Mechanical contract with Mortenson.***

(*See* Complaint, at ¶¶ 5, 6.) (emphasis added).

Second, Gem is trying to derive direct benefits from those Subcontracts. Count Three of Gem's Complaint in this action alleges breach of the Subcontracts it identifies in Paragraphs 5 and 6. The Complaint states:

> <u>COUNT THREE (AS TO MORTENSON)</u>
>
> . . . .
>
> As of the date of this complaint the work is complete, but Mortenson has, in breach of its contract, failed and neglected to pay Gem its balance due, which is now due and payable with interest.

(*See* Complaint, at ¶¶ 14-19.)

In short, because Gem assumed North East's obligations under the Subcontracts and is now suing for breach of the same Subcontracts, it cannot avoid the Subcontracts' arbitration obligation. *See InterGen*, 334 F.3d at 145-46; *Tepper*, 259 F. Supp. at 692.

Accordingly, this Court should stay this litigation, pursuant to Section 3 of the FAA, 9 U.S.C. § 3, pending the outcome of the arbitration between Mortenson, North East, Gem, and National Grange.

## II. Staying Litigation Pending Arbitration Is Not only Correct Under the Law, But It Is also the Most Practical Result, as It Will Allow All of the Involved Parties to Resolve the Dispute in a Single Proceeding, Preventing Inconsistent Results

Regardless of the outcome of this motion, arbitration will go forward between Mortenson, North East, and National Grange. There is no question North East and its surety are obligated to arbitrate their disputes arising out of the Projects with Mortenson in Minneapolis, Minnesota. In light of this pending arbitration, there is no reason why Gem should separately litigate its claims against Mortenson in this forum. To do so would waste judicial resources and may lead to inconsistent outcomes. Accordingly, as a practical matter as well as a legal matter, this litigation should be stayed to allow all parties involved to arbitrate their disputes.

## III. Stay of the Litigation is also Appropriate as to Mortenson's Sureties

Stay of the litigation is also appropriate with respect to Mortenson's sureties.[5] It is a fundamental principle of suretyship that a surety is only liable to the extent that its principal is liable. *See Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 78 (1st Cir. 1986) ("The basic rule on the liability of sureties is that the surety is not liable to the creditor unless his principal is liable.") (internal quotations and citations omitted); *see also* Restatement Third of Suretyship and Guaranty, §§ 19, 34. Mortenson's sureties are liable to Gem only to the extent Mortenson is liable to Gem. *See, e.g., Westcott Constr. Corp. v. Firemen's Fund of New Jersey*, 996 F.2d 14, 17 (1st Cir. 1993) ("Firemen's, as surety, is only liable to the extent its principal, Crouse, is liable.").

The case against the sureties should be stayed until Mortenson's liability is established in the arbitration. In fact, the liability of Mortenson's sureties cannot be determined by this Court until Mortenson's underlying liability (or lack thereof) is determined in the arbitration. Moreover, as a

---

[5] Mortenson's sureties on the Project, as stated on Mortenson's bond, are Federal Insurance Company and Travelers Casualty and Surety Company of America. Gem's Complaint is defective insofar as it does not name the appropriate parties for the assertion of a Miller Act claim.

practical matter, there is every likelihood that the parties' dispute will be fully and finally resolved in the arbitration and no further litigation against the sureties will be necessary.[6] Therefore, the lawsuit against Mortenson's sureties should not go forward until Mortenson's liability, if any, is determined in the arbitration.

## CONCLUSION

For the foregoing reasons, Mortenson asks this Court to stay litigation pending the outcome of the arbitration between Mortenson, North East, National Grange, and Gem. The issues involved in Gem's lawsuit are the subject of a valid arbitration agreement, which this Court should enforce pursuant to 9 U.S.C. §3.

Respectfully submitted,

**M.A. MORTENSON COMPANY**
By its attorneys,

Joseph J. Reale, Jr. - #3158
Joseph J. Reale, Jr., Ltd.
30 Kennedy Plaza, Suite 400
Providence, RI 02903
Tel: (401) 453-9900
Fax: (401) 453-9917

Dated: May 4, 2006

Of Counsel:
Faegre & Benson, LLP
Nathan A. Brennaman, #331776
James J. Hartnett, IV, #238624
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Tel: (612) 766-7000
Fax: (612) 766-1600

[6] In other words, in the unlikely event Mortenson is found liable in the arbitration, it will pay Gem the amount of the arbitration judgment, and no suit against the sureties will be necessary.