RECEIVED

DEC 2 2 2003

M.A. Mortenson

# M. A. MORTENSON COMPANY SUBCONTRACT AGREEMENT

THIS AGREEMENT, effective this 17th day of November 2003 , between M. A. Mortenson Company ("Mortenson") and North East Mechanical, 6 Green Hollow Road, Moosup, CT 06354 ("Subcontractor").

WHEREAS, Mortenson has entered into a contract with the Department of The Navy, Department of the Navy - Northern Division, Naval Facilities Engineering Command, Naval Activities Narragansett Bay Area, One Simonpietri Drive, Newport, RI 02841 ("Owner") to perform labor and furnish material for the construction of the Repairs and Alterations to Building W 36 –Newport Naval Station, Newport, Rhode Island ("Project"), pursuant to Drawings and Specifications prepared by Ames & Whitaker, Church Street, Waterbury, CT 06702, and the owner.

IN CONSIDERATION of their mutual promises herein, Subcontractor and Mortenson agree as follows:

1. CONTRACT DOCUMENTS.

1.1 The Drawings, Specifications, General Conditions, Supplementary General Conditions, Special Conditions, and Addenda have been made available to Subcontractor for examination. All of these documents, and this Subcontract Agreement and its Exhibits A through F , attached hereto, constitute the Contract Documents ("Contract Documents").

----REFER TO EXHIBITS A & B ----

1.2 In the event of conflict in the Contract Documents, the provisions of this Subcontract Agreement shall govern.

1.3 Subcontractor binds itself to Mortenson under this Agreement with respect to Subcontractor's Work in the same manner as Mortenson is bound to Owner under the Contract Documents.

1.4 Subcontractor has carefully examined and understands the Contract Documents, has investigated the site of the Work and the conditions under which it is to be performed, and enters into this Subcontract on the basis of its own examination, investigation and evaluation of such matters and not in reliance upon any opinions or representations of Mortenson, Owner, or any of their respective officers, agents, or employees.

2. SCOPE OF WORK. Subcontractor shall furnish and pay for all supervision, labor, materials, tools, equipment, services, scaffolds, appliances and all other items necessary to fully perform this Subcontract, consistent with the provisions of the Contract Documents, including completion of all of the following ("Work"):

----REFER TO EXHIBITS C & D ----

3. SUBCONTRACT PRICE. For the full and satisfactory performance of this Subcontract, in compliance with the provisions of this Agreement, Mortenson shall pay Subcontractor the fixed sum of Five Hundred Eighty Five Thousand and No/100 dollars ($585,000.00). This sum may be changed only in accordance with the provisions of this Subcontract Agreement.

EXHIBIT B

4. **TAXES AND CONTRIBUTIONS.** The Contract Price includes, and Subcontractor hereby accepts, exclusive liability for payment of all Federal, state, county, municipal and other taxes, imposed by law or contract, and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used in connection with the Work, including but not limited to (a) contributions, taxes or premiums (including interest and penalties) measured upon payroll or required to be withheld from employees; (b) sales, use, personal property and other taxes (including interest and penalties), whether stated separately, imposed by reason of performance of the Work, or any materials, equipment, labor, services or other items in connection with the Work; or (c) pension, welfare, vacation, annuity and other benefit contributions payable in connection with labor agreements or applicable law.

5. **LAWS AND PERMITS.** The Subcontract Price includes, and Subcontractor shall obtain and pay for all permits, licenses, and fees necessary to complete the Work in accordance with the Contract Documents. Subcontractor shall perform the Work in compliance with all applicable Federal, state, municipal and local laws, codes, ordinances, rules, regulations, and requirements, including without limitation those relating to O.S.H.A., discrimination in employment, fair employment practices and equal employment opportunity, without additional expense to Mortenson, and shall correct, at its own cost and expense, any violations thereof resulting from performance of the Work. Subcontractor shall furnish such proof as Mortenson may request showing compliance and correction of violations.

6. **TIME OF COMPLETION.**

6.1 Subcontractor shall begin Work as soon as the Project is ready for Work or, within 3 calendar days after being notified in writing by Mortenson, and shall prosecute and complete the Work in accordance with the construction schedule, as such may be from time to time revised.

6.2 Subcontractor shall promptly furnish all data requested by Mortenson for preparation and revision of construction schedules.

6.3 Should Subcontractor be delayed in the commencement, prosecution or completion of the Work by any cause beyond Subcontractor's control and not due to any fault, neglect, act or omission on its part, then Subcontractor shall be entitled to an extension of time. Such extension shall be for a period equivalent to that granted to Mortenson by Owner under the Contract Documents for the same cause of delay, and shall release and discharge Mortenson from any and all claims by Subcontractor on account of the delay. Subcontractor shall not be entitled to any extension of time unless a claim therefor is presented in writing to Mortenson within five (5) calendar days of the commencement of such claimed delay. Notwithstanding the foregoing, Subcontractor shall be entitled to compensation for delay if, and to the extent, that Mortenson secures compensation from Owner for delay on behalf of Subcontractor.

7. **PAYMENTS.**

7.1 Subcontractor shall submit an application for payment on Mortenson's form not later than the 25th day of each month for (a) 90% of the value of Subcontractor's labor and materials incorporated into the Work as computed on the basis of the schedule of values, prices and quantities of Work, as determined by Mortenson and Owner or Architect; and (b) to the extent allowable by the Contract Documents, 90% of the value of materials not incorporated into the Work but delivered and stored at the Project site. Prior to its first application for payment, Subcontractor shall submit a detailed schedule of values in form acceptable to Mortenson for use in checking Subcontractor's monthly application for payment. The schedule of values will be used for payment purposes only and shall not relieve Subcontractor from furnishing all Work required by this Subcontract. All applications must be certified and completed utilizing the payment forms required by the Contract Documents. Subcontractor agrees that, upon request by Mortenson, it shall furnish such information, and consents of surety as Mortenson may require, to confirm Subcontractor's entitlement to payment.

7.2 No payment will be made to Subcontractor until receipt by Mortenson of (a) an executed Subcontract Agreement; (b) evidence of insurance consistent with Article 16; and (c) payment and performance bonds required under Article 18 hereof.

7.3 Monthly progress payments (less retainage) shall be made to Subcontractor within seven (7) days after Mortenson's receipt of payment from Owner, so long as Subcontractor is not in default or breach of this Subcontract and is not subject to other reasons for withholding. Mortenson and Subcontractor expressly agree that payment to Mortenson on the Subcontractor's account by the Owner is an absolute condition precedent to Mortenson's obligations to pay the Subcontractor under this Subcontract. Subcontractor expressly agrees that it relies on the credit of the Owner, not Mortenson, for payment of its Work. Subcontractor shall not be entitled to payment to the extent there is: (a) any indebtedness owed by Subcontractor to Mortenson; (b) defective Work not remedied or defective materials not removed and replaced; (c) third party claims; (d) claimed failure of Subcontractor to make payments to its subcontractors, suppliers or laborers; (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price; (f) damage to Mortenson or another contractor or subcontractor; (g) unsatisfactory or untimely prosecution of the Work by Subcontractor; or (h) failure of Subcontractor to comply with the Contract Documents.

7.4 Mortenson shall have the right at all times to contact Subcontractor's sub-subcontractors and suppliers to ensure that the same are being paid by Subcontractor for labor or materials furnished for use in performing Subcontractor's Work.

7.5 Should Subcontractor: (a) fail to make timely payment to its suppliers, sub-subcontractors, laborers, or fringe benefit funds; (b) fail to compensate Mortenson or another contractor or subcontractor for damage caused by Subcontractor; or (c) fail to perform its clean up obligations pursuant to paragraph 8.5 hereof, Mortenson, in its sole discretion, may make direct payment to such individuals or entities and reduce the Subcontract Price accordingly.

7.6 When required by Mortenson and as a prerequisite to payment, Subcontractor shall provide, in a form satisfactory to Mortenson, partial lien or claim waivers and affidavits from Subcontractor, and its sub-subcontractors and suppliers for completed work. Such waivers may be made conditional upon payment.

7.7 When payment is based upon quantities at applicable unit prices, Subcontractor shall substantiate the quantities, and Mortenson and Owner shall have the right to examine, copy and audit relevant books and records of Subcontractor or any sub-subcontractor in order to verify accuracy and completeness of the quantities.

7.8 Final payment to Subcontractor shall be due after completion and acceptance of the Work by Mortenson and Architect and within seven (7) days of Mortenson's receipt from Owner of final payment for the Work, provided that: (a) Subcontractor shall have furnished evidence satisfactory to Mortenson that there are no claims, obligations, or liens for labor, services, materials, equipment, taxes or other items performed, furnished or incurred in connection with the Work; (b) Subcontractor shall have executed and delivered in a form satisfactory to Mortenson a General Release in favor of Mortenson, Mortenson's surety, if any, and Owner; and (c) Subcontractor shall have delivered to Mortenson written consent of its surety, if any, to final payment. Final payment to Subcontractor shall constitute waiver of any past, present and future claims by Subcontractor against Mortenson and Owner arising out of payment for Work under this Subcontract.

7.9 Progress or final payments shall not be acceptance of improper, faulty or defective Work or material, shall not release Subcontractor of any of its obligations under this Subcontract and shall not constitute a waiver of any rights or provisions hereof by Mortenson. Beneficial use or occupancy is not acceptance of the Work.

7.10 Subcontractor shall pay promptly for all materials, skills, labor and equipment used in performance of this Subcontract, as bills or claims become due. Subcontractor shall protect the Project and defend, indemnify and hold harmless Owner and Mortenson and Mortenson's surety, if any, from and against all claims, bond claims, equitable liens, mechanics' liens, damages, losses and expenses on account thereof, including without limitation legal fees and disbursements paid or incurred by Owner or Mortenson in connection therewith.

## 8. PROSECUTION OF WORK.

8.1 Subcontractor shall perform the Work in a diligent, efficient and skillful manner, as the Work or any portion thereof becomes available, to allow Mortenson to promote the general progress of the entire construction and so that Subcontractor's Work shall not interfere, hinder or delay other work.

8.2 Should Subcontractor delay the progress of the Work or of the Project, Subcontractor shall take necessary action to meet and maintain job progress, without additional compensation, and shall be liable to and reimburse Mortenson for damages resulting from such delay.

8.3 Subcontractor shall promptly secure delivery commitments, place orders for materials, equipment and services required in connection with the Work to avoid delays, and shall furnish copies of procurement documents and purchase orders upon request. Subcontractor shall furnish goods, materials, equipment and services in compliance with all applicable safety, certification and testing codes and laws.

8.4 Shipments of all goods, materials and equipment to the Project shall be consigned to Subcontractor c/o Mortenson, c/o Owner with all transportation, freight or delivery charges prepaid by Subcontractor. Subcontractor shall be solely responsible for receiving and unloading shipments.

8.5 Subcontractor shall clean up and remove all debris caused by its operations. Upon written notice, Mortenson may arrange to have this work performed and charge the cost to Subcontractor.

8.6 Subcontractor shall be solely responsible for protection of its Work and for loss or damage to materials, tools, equipment, or other personal property, owned or rented or used by Subcontractor in performance of its Work.

8.7 When as-built drawings are required by the Contract Documents, Subcontractor shall record as-built conditions on the Drawings and Detail Drawings in a form acceptable to Mortenson, on a weekly basis, during performance of the Work.

8.8 Notwithstanding dimensions given in the Drawings, Detail Drawings, Specifications and other Contract Documents, Subcontractor shall take such measurements as will insure proper matching and fitting of Subcontractor's Work.

8.9 Subcontractor shall promptly prepare and submit to Mortenson such shop drawings, submittals and samples as may be necessary to describe completely the details of the Work and to ensure timely fabrication, delivery and installation of the Work. Approval of such shop drawings by Mortenson shall mean only that the submission conforms to the general concept of the Project, and shall not relieve Subcontractor of its obligation to perform the Work in compliance with the Contract Documents.

8.10 Should performance of the Work hereunder depend upon performance of other work, Subcontractor shall carefully examine all contiguous or dependent work, determine whether it is suitable for performance of the Work hereunder, report immediately any unsuitable conditions to Mortenson in writing, and allow Mortenson reasonable time to have such unsuitable conditions remedied. Unless Subcontractor reports such unsuitable conditions, Subcontractor shall be deemed to have accepted dependent work as adequate for completion of the Work.

8.11 Subcontractor is responsible for intermeshing of various parts of its Work so that no part shall be left unfinished or incomplete owing to any disagreement between Subcontractor and its sub-subcontractors or other subcontractors.

8.12 No substitutions of similar supplies, materials or equipment for items called for by the Contract Documents shall be made unless approved in writing by Mortenson, Owner and Architect, which approval shall not relieve Subcontractor from satisfactory and timely completion of all Work, or from compliance of all Work with the Contract Documents.

9. **LABOR.** Subcontractor shall not employ personnel, means, materials or equipment which may cause strikes, work stoppages or interferences by workers employed by Subcontractor, Mortenson or other contractors or subcontractors. Subcontractor agrees to be bound by any applicable Project Labor Agreement.

10. **TOOLS AND EQUIPMENT.** Subcontractor shall provide all tools and equipment necessary to perform its Work, including but not limited to scaffolds, hoisting and specialty items. Mortenson's tools and equipment shall be available to Subcontractor only at Mortenson's discretion and on mutually satisfactory terms. Subcontractor agrees to assume sole responsibility for all claims for loss or damage to its property, and Mortenson's property, arising out of Subcontractor's use of Mortenson's equipment, including without limitation hoisting of material. Subcontractor agrees that operators of Mortenson's equipment during the period of Subcontractor's use, either singly or with others, shall be deemed loaned servants of Subcontractor even though actually employed by Mortenson or others.

11. **SAFETY.**

11.1 Subcontractor shall perform the Work in a safe manner, shall comply with all safety measures initiated by Mortenson or required by the Contract Documents, and shall comply with all applicable laws, codes, ordinances, rules, regulations and orders of any public authority for the safety of persons or property, including such provisions as are stricter than the safety measures initiated by Mortenson or required by the Contract Documents. Subcontractor shall be solely responsible for protection and safety of its employees, including employees of its subcontractors and suppliers of every tier, for final selection of safety methods and means, for required safety reports and records, for daily inspection of its work area and its employees' safety equipment, and for instruction of its employees on health and safety, including weekly safety meetings. Subcontractor agrees to establish a goal of zero accidents and injuries for the Project, and to implement and maintain and enforce a safety program consistent with such goal. Subcontractor agrees to comply with the Mortenson Zero Injury Safety Training Manual and, if requested in writing, to prepare a written site-specific safety plan for the Project prior to commencing the Work. Subcontractor agrees to complete all documents and conduct or participate in all site-specific programs related to elimination of accidents and injuries at the site, as enumerated in Exhibit "E" attached hereto.

11.2 Subcontractor shall reimburse Mortenson for all costs incurred by Mortenson arising out of or connected with a failure or alleged failure of Subcontractor to comply with this Article, including costs of investigation and fines and penalties for alleged safety violations by Subcontractor, regardless of whether Mortenson has or has not assisted or advised Subcontractor in fulfilling such responsibilities.

11.3 Subcontractor shall stop any part of the Work which either Mortenson or Subcontractor determines to be unsafe until corrective measures have been taken. Failure on the part of Mortenson to stop any part of the Work shall in no way relieve Subcontractor of its responsibility hereunder.

12. **CHANGE ORDERS AND FIELD WORK ORDERS.**

12.1 Mortenson shall have the right by written order (change order or field work order), without notice to Subcontractor's surety, if any, to order changes consisting of additions or deletions to the Work, or other revisions to the scope of Work or time of completion of this Subcontract. Subcontractor shall submit to Mortenson, in writing, within twenty (20) days of receipt of notification of the change, or within such shorter period as may be required by the Contract Documents, any claim for adjustment of the Subcontract Price. Should issuance of instructions, drawings, or directions by other than written order be claimed to result in additional costs, Subcontractor shall submit written notice to Mortenson within five (5) calendar days of receipt thereof and prior to commencing such work. Subcontractor shall not be entitled to change or adjustment unless authorized in writing by Mortenson. Subcontractor shall not have the right to maintain an action in court or arbitration to recover for extra work, unless Subcontractor has complied with the requirements set forth above.

12.2 The value of the Work to be changed, added or deleted shall be determined by one or more of the following methods or combinations thereof as Mortenson may elect: (1) mutual acceptance of a lump sum with properly itemized costs; (2) unit prices stated in the Contract Documents or subsequently agreed upon (unit prices shall be deemed to include an allowance for all of Subcontractor's direct and indirect costs, including, without limitation, office or shop expense, overhead, profit and bond); or (3) actual field cost incurred in performance of the changed Work, plus allowance for overhead, supervision and profit, defined as follows:

12.2.1 Actual field cost shall mean costs necessarily incurred in the proper performance of the Work and

paid by Subcontractor at rates not higher than the standard paid in the locality of the Project (except with the prior consent of Mortenson) defined as follows:

(a) Wages paid for labor in the direct employ of Subcontractor in performance of the Work plus a payroll mark-up as approved by the Navy and allowed by the contract documents for field labor and for fabrication shop labor to cover all overhead items applicable to payroll, such as insurance, taxes, F.I.C.A., workers' compensation, unemployment taxes, and fringe benefits.

(b) Net cost of all materials, supplies and equipment used in or incorporated in the Work.

(c) Third party rental charges of all necessary machinery and equipment, exclusive of hand tools, used in performing the changed Work, including installation, minor repairs and replacements, dismantling, removal, transportation and delivery costs thereof at rental charges consistent with those prevailing in the area. Total third party rental charges on machinery or equipment rented under an agreement containing a purchase option clause shall not exceed 75% of the option purchase price. Subcontractor owned machinery and equipment used on the Project shall be charged at not more than 75% of current A.E.D. rates.

12.2.2 The maximum percentage allowance added to itemized costs under a lump sum proposal or to actual field cost shall be 10% for changed or extra work performed by Subcontractor's own forces and an additional 5% for changed or extra work performed by a sub-subcontractor. The allowance will be paid as full compensation for Subcontractor's and sub-subcontractor's profit, general superintendence, hand tools, capital and interest expense, insurance expense, field office expense, overhead, and all other elements of extra cost not defined herein as actual field cost. Notwithstanding the foregoing, the allowance payable to Subcontractor and its sub-subcontractors pursuant to this paragraph shall not exceed the lesser of (a) 15% or (b) the maximum mark-up permitted in the Contract Documents for changed or extra work less Mortenson's mark-up on such work.

12.2.3 Mortenson shall have the right to inspect, copy and audit the books and records of Subcontractor or any sub-subcontractor making claim for reimbursement for actual field costs and allowances in order to verify the accuracy and allowability of all costs and allowances claimed.

12.3 Should the parties be unable to agree as to the value of the Work to be changed, added or omitted, Subcontractor shall proceed with the Work promptly under written order of Mortenson and the Work shall be paid for at actual field costs or other applicable method approved by Mortenson.

12.4 All changes, additions or deletions to the Work ordered in writing by Mortenson shall be deemed part of the Work hereunder and shall be performed in compliance with all provisions of the Contract Documents.

13. **INSPECTION.**

13.1 Mortenson, Architect, Owner and their authorized representatives shall have the right to inspect and test the Work and the components thereof at all times and places to verify compliance with the Contract Documents and standards of good workmanship.

13.2 Subcontractor shall provide safe facilities for inspection of the Work by Mortenson, Architect and their authorized representatives in the field, at shops, or at any other place where materials or equipment for the Work are in preparation, testing, manufacture, treatment or storage.

13.3 All inspections and tests are for the benefit of Mortenson and Owner and shall not relieve Subcontractor of responsibility for providing its own quality control measures to assure that the Work complies with the Contract Documents. Inspection or testing by Mortenson or Architect shall not be construed as constituting acceptance and shall not relieve Subcontractor of responsibility for any non-compliance, damage to or loss of the Work prior to acceptance, or in any way affect the continuing rights of Mortenson or Owner after acceptance of completed Work.

13.4 Within twenty-four (24) hours after receiving written notice from Mortenson that Work has been rejected by Mortenson or Architect as defective or in any way failing to comply with the Contract Documents, Subcontractor, at its own expense shall remove all portions of such Work from the premises and shall replace the same with conforming Work and make good all work of others damaged or destroyed by or as a result of such defective, or non-conforming Work or by removal or replacement thereof.

## 14. TAKING OVER PERFORMANCE-TERMINATION FOR DEFAULT.

14.1 Should Subcontractor at any time: (a) fail to maintain the insurance coverages specified in Article 16 hereof; (b) fail to provide the payment and performance bonds required in Article 18 hereof; (c) fail to supply sufficient skilled workers, equipment or materials of proper quality and quantity; (d) fail to make timely payments for labor or materials; (e) fail to proceed with the Work in the sequence directed by Mortenson; (f) fail to prosecute the Work with promptness and diligence; (g) cause stoppage, delay or interference to work of Mortenson or any other contractor or subcontractor; (h) fail to perform the Work in compliance with the Contract Documents; or should (i) there be filed by or against Subcontractor a petition in bankruptcy or for an arrangement or reorganization (Mortenson being unwilling to accept and hereby declines performance by any trustee in bankruptcy); or (j) Subcontractor become insolvent or go into liquidation or dissolution or make a general assignment for the benefit of creditors or otherwise acknowledge insolvency; then in any of such events, each of which shall constitute a default of Subcontractor, Mortenson shall have the right, to the extent permitted by law, and in addition to any other rights and remedies provided by the Contract Documents or by law, after seventy-two (72) hours written notice to Subcontractor mailed or delivered to its last known address, (i) to perform (through itself or through others) any uncompleted part of the Work and to deduct the cost thereof from any monies due or to become due to Subcontractor under this Subcontract or (ii) to terminate employment of Subcontractor for all or any portion of the Work, enter upon the premises and take possession of all materials, equipment, scaffolds, tools, and other items thereon, all of which Subcontractor hereby transfers, assigns and sets over to Mortenson for the purpose of completing the Work, and to employ persons as necessary to complete the Work and to provide all labor, services, materials, equipment and other items required therefor.

14.2 In case of termination, Subcontractor shall not be entitled to receive any further payment under this Subcontract until the Work shall be wholly completed to the satisfaction of Mortenson, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the cost incurred by Mortenson in completing the Work, such excess shall be paid by Mortenson to Subcontractor, but if such cost shall exceed such unpaid balance, then Subcontractor shall pay the difference to Mortenson. Such costs shall include the cost of completing the Work in conformance with the Contract Documents and of performing and furnishing all labor, services, materials, equipment, and other items required therefor, and also all losses, damages, costs and expense, including legal fees and disbursements incurred by reason of or resulting from Subcontractor's default.

## 15. CONVENIENCE TERMINATION.

15.1 Mortenson may terminate this Subcontract in whole or in part, at any time by written notice to Subcontractor whether or not Subcontractor is in default, in the event and to the extent that Owner has exercised any of its rights of terminating the agreement between Mortenson and Owner. Such termination shall be effective at the time and in the manner specified in said notice and shall be without prejudice to any claims which Mortenson or Owner may have against Subcontractor. Upon receipt of any such notice, Subcontractor shall, unless the notice directs otherwise: (a) immediately discontinue the Work on the date and to the extent specified in the notice; (b) place no further orders for materials, equipment or services, except as may be necessary for completion of such portion of the Work as is not discontinued; (c) promptly make every reasonable effort to procure cancellations, upon terms satisfactory to Mortenson, of all orders or of sub-subcontracts to the extent they relate to the performance of the Work discontinued; and (d) thereafter execute only that portion of the Work as may be necessary to preserve and protect Work already in progress and to protect materials and equipment at the Project site or in transit thereto.

15.2 Subcontractor waives any claims for damages, including loss of anticipated profits for uncompleted Work, on account of termination by Mortenson pursuant to paragraph 15.1 and shall accept as its sole remedy payment of the amount recovered by Mortenson from Owner allocated as compensation for Subcontractor's Work.

16. **INSURANCE.**

16.1 Prior to starting the Work, Subcontractor shall procure, maintain and pay for such insurance as will protect against claims for bodily injury or death, or for damage to property, including loss of use, which may arise out of operations by Subcontractor or by any sub-subcontractor or by anyone employed by any of them, or by anyone for whose acts any of them may be liable. Such insurance not be less than the greater of coverages and limits of liability specified in paragraph 16.2 below, any coverages and limits of liability specified in the Contract Documents or coverages and limits required by law.

16.2 Subcontractor shall procure and maintain the following minimum insurance coverages and limits of liability:

| | |
|---|---|
| Workers' Compensation | Statutory Limits |
| Employer's Liability | $1,000,000 each accident |
| | $1,000,000 disease policy limit |
| | $1,000,000 disease each employee |
| Commercial General Liability | $2,000,000 each occurrence |
| | $2,000,000 aggregate (applicable on a per project basis) |
| Comprehensive Automobile Liability | $2,000,000 each accident |

Commercial General Liability insurance required under this paragraph shall be written on an occurrence form and shall include coverage for Products/Completed Operations (extending two (2) years after final acceptance of the Project by Owner or such longer period as the Contract Documents may require), Broad Form Property Damage including Completed Operations, Personal Injury with Employment Exclusion (if any) deleted, Blanket XCU and Blanket Contractual Liability insurance applicable to Subcontractor's defense and indemnity obligations under Article 17 below, and other contractual indemnities assumed by Subcontractor under the Contract Documents. Commercial General Liability insurance shall include "stop gap" coverage for work in those states where Workers' Compensation insurance is provided through a state fund if Employer's liability coverage is not available. Comprehensive Automobile Liability insurance required under this paragraph shall include coverage for all owned, hired and non-owned automobiles. Workers' Compensation coverage shall include a waiver of subrogation against Mortenson and Owner.

16.3 Employer's Liability, Commercial General Liability and Comprehensive Automobile Liability insurance may be arranged under single policies for full minimum limits required, or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability policy. The general aggregate on the Commercial General Liability policy shall apply on a project specific basis.

16.4 Subcontractor shall endorse its Commercial General Liability (including products/completed operations coverage), Comprehensive Automobile Liability, and Umbrella/Excess Liability policies to add Mortenson, Owner, and such other parties as Mortenson is required under the main contract to name as additional insureds on Mortenson's insurance, as "additional insureds" with respect to liability arising out of (a) operations performed for Mortenson or Owner by or for Subcontractor, (b) acts or omissions of Mortenson or Owner in connection with their general supervision of operations by or for Subcontractor, (c) Subcontractor's use of Mortenson's tools and equipment, and (d) claims for bodily injury or death brought against Mortenson or Owner by Subcontractor's employees, or the employees of Subcontractor's subcontractors of any tier, however caused, related to the performance of operations under the Contract Documents. Such insurance afforded to Mortenson, Owner, and others as additional insureds under Subcontractor's policies shall be primary insurance and not excess over, or contributing with, any insurance purchased or

maintained by Mortenson or Owner, or others required to be included as additional insureds.

16.5 Subcontractor shall maintain in effect all insurance coverages required under this Article, or by the other Contract Documents, at Subcontractor's sole expense and with insurance carriers licensed to do business in the State in which the Project is located and having a current A.M. Best rating of no less than B+, unless another A.M. Best rating is specifically accepted by Mortenson in writing. In the event Subcontractor fails to procure or maintain any insurance required by this Article, Mortenson may, at its option, purchase such coverage and deduct the cost thereof from any monies due to Subcontractor, or withhold funds from Subcontractor in an amount sufficient to protect Mortenson and other insured parties, or terminate this Agreement pursuant to its terms.

16.6 All insurance policies shall contain a provision that coverages and limits afforded thereunder shall not be canceled, materially changed, non-renewed, or restrictive modifications added, without thirty (30) days prior written notice to Mortenson. Certificates of Insurance shall be filed with Mortenson prior to start of Subcontractor's Work. Renewal certificates shall be provided to Mortenson not less than ten (10) days prior to the expiration date of any of the required policies. All Certificates of Insurance shall be in a form acceptable to Mortenson and shall provide satisfactory evidence that Subcontractor has complied with all insurance requirements. Mortenson shall not be obligated to review such certificates or other evidence of insurance, or to advise Subcontractor of any deficiencies in such documents, and receipt thereof shall not relieve Subcontractor from, nor be deemed a waiver of Mortenson's right to enforce, the terms of Subcontractor's obligations hereunder. Mortenson shall have the right to examine any policy required under subparagraphs 16.1, 16.2 and 16.3.

16.7 To the extent of coverage afforded by Builder's Risk or any other property or equipment floater insurance applicable to the Work or the Project or equipment used in performance of the Work or the Project, regardless of whether such insurance is owned by or for the benefit of Subcontractor, Mortenson, Owner, or their respective agents and subcontractors, Mortenson and Subcontractor waive all rights against each other and Owner, sub-subcontractors, agents and employees each of the other, for loss or damage to the extent that the interests of Mortenson and Subcontractor are covered by such insurance, except such rights as they may have to the proceeds of such insurance. If policies of insurance referred to in this paragraph require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

16.8 Any deductible amount applied to any loss payable under the Builders Risk Insurance shall be borne by the insured whose Work is damaged in direct proportion as its individual loss bears to the total loss, regardless of whether such loss is to work installed and completed, to materials stored on or off site, or to materials in transit. Mortenson and Owner neither represent nor assume responsibility for the adequacy of the Builders Risk Insurance to protect the interests of Subcontractor. It shall be the obligation of Subcontractor to purchase and maintain any supplementary property insurance that it deems necessary to protect its interest in the Work.

16.9 If the Work of this Agreement includes design, Subcontractor shall procure, maintain, and pay for Professional Errors and Omissions insurance with limits of not less than $2,000,000 per claim and $2,000,000 annual aggregate. If such insurance is written on a claims made basis, the retroactive date shall be prior to the start of Subcontractor's Work. Subcontractor agrees to maintain such coverage for two years after final acceptance of the Project by the Owner or such longer period as the Contract Documents may require. Renewal policies during this period shall maintain the same retroactive date.

17. **INDEMNITY.**

17.1 To the fullest extent permitted by law, the Subcontractor shall defend and indemnify Mortenson and the Owner from any and all suits or claims alleging liabilities, damages or injuries to persons or property arising out of, or in any manner connected with the Subcontractor's Work, including claims for which Mortenson and/or the Owner may be or may be claimed to be liable, and including claims that arise either during construction or after substantial completion of the project. The Subcontractor understands and agrees that this Agreement obligates the Subcontractor to defend and indemnify Mortenson and the Owner from claims that allege negligence or other wrongful conduct on their part. The Subcontractor's obligation under this paragraph shall exclude, however, liability for damages or injury when such damages or injury are cause by the sole fault of Mortenson or the Owner. The Subcontractor understands and

agrees to undertake this obligation regardless whether the injured party asserting a suit or claim is an employee of the Subcontractor. The Subcontractor's obligation hereunder shall not be limited by the operation of a worker's or workman's compensation act, any disability act, or any other employee benefit act. The Subcontractor understands and agrees that this paragraph obligates the Subcontractor to pay any and all legal fees and expenses incurred by Mortenson or the Owner in defending any suit or claim brought against either of them that arises out of or is in any manner connected with the Subcontractor's Work, as well as any legal fees and expenses incurred in connection with enforcing this paragraph. The Subcontractor further agrees to obtain, maintain and pay for commercial liability insurance, to the fullest extent available, to secure the provisions of this paragraph, including completed operations coverages. The parties hereto agree that this paragraph conforms to the requirements of Virginia Code Annotated § 11-4.1.

18. **BONDS.**

18.1 If indicated in the space provided below, Subcontractor shall obtain and furnish to Mortenson performance and payment bonds covering faithful performance of this Subcontract and payment of all obligations arising thereunder. The bonds shall be written on Mortenson's Subcontract Performance Bond and Payment Bond forms, each in the full amount of the Subcontract Price. The penal sum of the bonds shall be increased in the same amount as any increase in the Subcontract Price. The surety(s) executing the bonds shall be authorized to conduct surety business in the state in which the Project is located and shall be listed in the current Department of Treasury Circular No. 570, with an underwriting limitation equal to or greater than the penal sum of the bonds to be furnished. The premium for such bonds shall be included in the Subcontract Price and shall be paid by Subcontractor.

Bonds Required __X__ Bonds Not Required

18.2 Subcontractor shall furnish such performance and payment bonds, if required above, within ten (10) days of receipt of this Subcontract, but in any event prior to commencement of any Work under this Subcontract. Should Subcontractor fail to furnish the required bonds within the specified time, Mortenson shall have the right to terminate this Subcontract pursuant to Article 14.

19. **PATENT INFRINGEMENT.** Subcontractor shall pay all royalties and license fees and shall defend all suits or claims for infringement of any patent rights arising out of the Work.

20. **WARRANTY.**

20.1 Subcontractor warrants and guarantees that it shall furnish new materials and equipment of good quality, fit for the purpose intended and free from defects and in compliance with all requirements of the Contract Documents; that without cost to Mortenson or Owner it shall promptly correct improper or defective Work, materials or equipment and other work affected by such correction which may be discovered within one year from the date of final acceptance of the Project by Owner. Subcontractor shall also provide any broader guarantee or longer warranty period required by the Contract Documents. Required equipment and system warranty documents and as-built drawings shall be delivered to Mortenson within thirty (30) days of completion of the Work. Nothing contained in this paragraph shall be construed to establish a period of limitation with respect to other obligations which Subcontractor has under the Contract Documents. Establishment of the one year time period herein (and any other period elsewhere in the Contract Documents) relates only to Subcontractor's specific obligations to correct the Work and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced.

20.2 Subcontractor represents, warrants and covenants that the Work shall be Year 2000 Compliant and that Subcontractor shall conduct a thorough review and testing of the Work to verify that it is Year 2000 Compliant. For the purposes of this Agreement, an item is Year 2000 Compliant only if (a) it accurately processes, stores and displays, in an unambiguous manner, date data, including calculating, comparing, and sequencing dates correctly and without interruption, both before, during, and after the year 2000; (b) it correctly interoperates and exchanges date data with any other system which conforms to clause (a); and (c) the specifications and instructions associated with the item contain no information contradicting clause (a) or (b). Upon becoming aware that the Work is or might be in breach of the Year 2000 Compliant requirement, Subcontractor shall immediately provide complete details to Mortenson regarding the actual or possible breach, and the steps that Subcontractor will take to cure such breach or

to verify that there is no breach. Subcontractor agrees to provide assistance, at no additional charge to Mortenson, which Mortenson reasonably believes is necessary for Mortenson to conduct its own Year 2000 Compliance testing.

21. **DISPUTES.**

21.1 If Arbitration of disputes is provided for in the Contract Documents, and if Mortenson, in its sole discretion, elects to demand Arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Agreement, including breach thereof, shall be decided by arbitration in the manner provided for in the Contract Documents.

21.2 If the Contract Documents do not provide for Arbitration and if Mortenson, in its sole discretion, elects to demand Arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Subcontract, including breach thereof, shall be decided by Arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise. Arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

21.3 If the Contract Documents provide for administrative procedures for resolution of disputes, Subcontractor agrees to comply with such procedures and submit any claims or disputes to Mortenson in such manner and time as will permit Mortenson to comply with such administrative procedures. Subcontractor agrees not to institute (and to stay) legal or other proceedings against Mortenson until such administrative procedures and remedies have been exhausted.

21.4 Any claim by Subcontractor as a result of acts, errors or omissions of Owner or its agents or representatives, including without limitation Architect, may be advanced by Mortenson at its election and in its sole discretion. If Mortenson decides in good faith not to proceed with such claim, Subcontractor shall be entitled to proceed with its claim directly against the Owner or its agents. If Mortenson elects to advance Subcontractor's claim, Subcontractor's right of recovery on such claim shall be limited solely to that dollar amount and other relief, which is recovered by Mortenson on behalf of Subcontractor from Owner. Mortenson shall not be liable to the Subcontractor for any monies or other relief except those granted to Mortenson by Owner for the benefit of Subcontractor. Monies recovered from Owner on behalf of Subcontractor shall be paid by Mortenson to Subcontractor. Subcontractor hereby agrees to make no claim to further payment beyond the Subcontract Price arising out of the acts, errors, or omissions of Owner or its agents or representatives, except to the extent that Mortenson may receive funds from Owner on behalf of Subcontractor less costs and expenses incurred by Mortenson in prosecuting such claims.

22. **ASSIGNMENT AND SUBLETTING.**

22.1 Neither this Subcontract nor any monies due or to become due hereunder shall be assignable without prior written consent of Mortenson. Any assignment without prior written consent shall be of no effect and shall vest no right in the assignee against Mortenson. Mortenson's consent to any assignment shall not relieve Subcontractor of any of its obligations under the Contract Documents, and Subcontractor shall remain as fully responsible for the defaults, acts and omissions of its assignees and all persons directly or indirectly employed by them as it is for its own defaults, acts and omissions and those of its own officers, agents, and employees.

22.2 Subcontractor shall submit to Mortenson a listing of all sub-subcontractors who will perform work on the Project. Subcontractor shall bind each of its sub-subcontractors to all of the provisions of the Contract Documents with respect to the Work. Mortenson's consent to any subcontracting shall not create any contractual relationship between Mortenson and any sub-subcontractor to whom the Work or any portion thereof is subcontracted.

23. **EQUAL OPPORTUNITY.** Subcontractor, during performance of this Subcontract, shall take affirmative action to insure that all employees and applicants are treated without discrimination with regard to race, color, creed, age, sex, disability, or national origin; shall comply with all applicable Federal, state and local laws, ordinances, orders and regulations with respect to employment practices; and shall certify that it does not maintain or

provide for its employees any segregated facilities at any of its establishments as required by the law, ordinance, order or regulation.

24. **CONTINGENT ASSIGNMENT OF SUBCONTRACT.** Subcontractor hereby consents to assignment of this Subcontract Agreement by Mortenson to Owner (or Owner's Lender) provided that:

(a) Such assignment is effective only after Owner's termination of the Contract between Owner and Mortenson for cause pursuant to the terms thereof. In such event, Subcontractor agrees to complete the Work for the benefit of the Owner (or Owner's Lender), conditioned upon Owner's written agreement (1) to pay for all labor, material, and services furnished at Owner's request and (2) to pay for all labor, material, and services previously rendered to the extent such amounts are due and payable to Subcontractor under the terms of this Subcontract Agreement.

(b) Assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract between Mortenson and Owner.

25. **MISCELLANEOUS.**

25.1 Mortenson's waiver of a breach of the provisions of this Subcontract shall be made only in writing and shall not affect any other or future breaches. Mortenson's remedies herein are cumulative and in addition to other remedies in law or equity.

25.2 Subcontractor shall perform the provisions of this Subcontract as an independent contractor and shall not be an agent or employee of Mortenson.

25.3 In the event any term or provision of this Subcontract is deemed void or unenforceable, it shall not thereby invalidate or be construed to invalidate any other term or provision of this Subcontract, which shall remain in full force and effect.

25.4 This Subcontract constitutes the entire agreement between the parties hereto and is effective on the date set forth above. No oral representations or other agreements have been made by Mortenson except as stated in this Subcontract. This Subcontract may not be changed in any way except as herein provided, and no provision hereof may be waived by Mortenson except in writing signed by its duly authorized officers or agent.

IN WITNESS WHEREOF, Subcontractor and Mortenson have executed this Subcontract as set forth below.

| | |
|---|---|
| NORTH EAST MECHANICAL<br>Subcontractor | M. A. MORTENSON COMPANY |
| By Walter Bryant | By [signature] |
| Its President | Its Project Manager |

CT P-1 (281559) S-3 (39248)

Subcontractor's License No. R.I. - MP (1890) PF (16297)

(Insert License No., if any, for State or locality in which the Work is to be performed)

RECEIVED

DEC 2 2 2003

M.A. Mortenson

# SUBCONTRACTOR PERFORMANCE BOND

BOND NO. S240130

KNOW ALL PERSONS BY THESE PRESENTS: that North East Mechanical, 6 Green Hollow Road Moosup, CT 06354

*(Here insert full name and address or legal title of Subcontractor),*

as Principal, hereinafter called Subcontractor, and, National Grange Mutual Insurance Company, 55 West Street, Keene, NH 03431

*(Here insert full name and address or legal title of Surety),*

as Surety, hereinafter called Surety, are held and firmly bound unto M.A. Mortenson Company, as Obligee, hereinafter called Obligee, in the amount of Five Hundred Eighty-Five Thousand and 00/100 Dollars ($ 585,000.00), for the payment whereof Subcontractor and Surety bind themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents.

WHEREAS, Subcontractor has, by written agreement dated November 17, 20 03, entered into a Subcontract Agreement with Obligee, hereinafter called Subcontract, for Repairs and Alterations to Building W36 Newport Naval Station, Newport, RI, Contract No. N62472-02-D-0802, Task Order 0007, Mortenson Project No. 035015

*(Here insert name and location of the project and description of the subcontract work),*

which Subcontract is by reference made a part hereof.

*This document is modified from the AIA Document A311, copyright 1970, by the American Institute of Architects.*
*V-21A (8/91)*

# SUBCONTRACTOR PERFORMANCE BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Subcontractor shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of the Subcontract made by the Obligee.

Whenever Subcontractor shall be, and declared by Obligee to be in default under the Subcontract, the Obligee having performed Obligee's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

1) Complete the Subcontract in accordance with its terms and conditions; or

2) Obtain a bid or bids for completing the Subcontract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or, if the Obligee elects, upon determination by the Obligee and the Surety jointly of the lowest responsible bidder, arrange for a contract between such bidder and Obligee, and make available as Work progresses (even though there should be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the subcontract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "cost of completion" includes responsibilities of the Subcontractor for correction of defective work and completion of the Subcontract, the Obligee's legal and design professional costs resulting from the Subcontractor's default, and delay damages (liquidated or actual). The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Obligee to Subcontractor under the Subcontract and any amendments thereto, less the amount paid by Obligee to Subcontractor.

Any suit under this bond must be instituted before the expiration of the time period in which suits may be brought under the Subcontract by the Obligee in the jurisdiction where the Subcontract is to be performed, such period to be computed from the later of (1) the date of Subcontractor default; or (2) the date Surety refuses or fails to perform its obligations under this bond, or (3) the date of substantial completion of the project as established by the contract documents.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein or the heirs, executors, administrators, or successors of the Obligee.

Signed and sealed this 1st day of December, 2003.

North East Mechanical
(Subcontractor) (Seal)

[signature]
(Title) PRESIDENT

National Grange Mutual Insurance Company
(Surety) (Seal)

[signature]
(Title) Shelly Andrade, Attorney-in-Fact

(Witness)

[signature]
(Witness)

# SUBCONTRACTOR
# LABOR AND MATERIAL PAYMENT BOND

**THIS BOND IS ISSUED SIMULTANEOUSLY WITH PERFORMANCE BOND IN FAVOR OF THE OBLIGEE CONDITIONED ON THE FULL AND FAITHFUL PERFORMANCE OF THE SUBCONTRACT**

BOND NO. S240130

KNOW ALL PERSONS BY THESE PRESENTS: that North East Mechanical, 6 Green Hollow Road

Moosup, CT 06354

*(Here insert full name and address or legal title of Subcontractor)*

as Principal, hereinafter called Subcontractor, and, National Grange Mutual Insurance Company

55 West Street, Keene, NH 03431

*(Here insert full name and address or legal title of Surety)*

as Surety, hereinafter called Surety, are held and firmly bound unto M.A. Mortenson Company as Obligee, hereinafter called Obligee, for the use and benefit of claimants as hereinbelow defined, in the amount of Five Hundred Eighty Five Thousand and 00/100 ($585,000.00), for the payment whereof Subcontractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Subcontractor has, by written agreement dated November 17, 2003, entered into a Subcontract Agreement with Obligee, hereinafter called Subcontract, for Repairs and Alterations to Building W36 Newport Naval Station, Newport, RI, Contract No. N62472-02-D-0802, Task Order 0007, Mortenson Project No. 035015

*(Here insert name and location of the project and description of the subcontract work),*

which Subcontract is by reference made a part hereof.

# SUBCONTRACTOR LABOR AND MATERIAL PAYMENT BOND

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Subcontractor shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

1. A claimant is defined as (a) one having a direct contract with the Subcontractor, or (b) one having valid mechanic lien rights in the jurisdiction where the project is located, who provides labor, material, or both, used or reasonably required for use in the performance of the Subcontract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Subcontract.

2. The above-named Subcontractor and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of any costs or expenses, including attorneys' fees, of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

a). Unless claimant, other than one having a direct contract with the Subcontractor, shall have given written notice to the following: the Subcontractor, the Obligee, and the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in envelopes addressed to the Subcontractor, Obligee, and Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.

b) After the expiration of one (1) year following the date on which Subcontractor ceased work on said Subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanics' liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

5. The Surety hereby waives notice of any alteration or extension of the Subcontract made by Obligee.

Signed and sealed this 1st day of December, 2003.

(Witness)

Donna L. Spader
(Witness)

North East Mechanical
(Subcontractor) (Seal)
Walter A. Zaman
(Title) Walter A Zaman - PRESIDENT

National Grange Mutual Insurance Company
(Surety) (Seal)
Shelly Andrade
(Title) Shelly Andrade, Attorney-in-Fact

NATIONAL GRANGE MUTUAL INSURANCE COMPANY

**POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS: That the National Grange Mutual Insurance Company, a New Hampshire corporation having its principal office in the City of Keene, State of New Hampshire, pursuant to Article V, Section 2 of the By-Laws of said Company, to wit:

"Section 2. The board of directors, the president, any vice president, secretary, or the treasurer shall have the power and authority to appoint attorneys-in-fact and to authorize them to execute on behalf of the company and affix the seal of the company thereto, bonds, recognizances, contracts of indemnity or writings obligatory in the nature of a bond, recognizance or conditional undertaking and to remove any such attorneys-in-fact at any time and revoke the power and authority given to them. " Pursuant to said by-law does hereby make, constitute and appoint **W F Hertel James L Masters**

**Joseph A Servant Shelly Andrade**

its true and lawful Attorneys-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed, bonds, undertakings recognizances, contracts of indemnity, or other writings obligatory in the nature of a bond subject to the following limitation:

1. **No one bond to exceed Five Million Dollars ($5,000,000.00).**

and to bind the National Grange Mutual Insurance Company thereby as fully and to the same extent as if such instruments were signed by the duly authorized officers of the National Grange Mutual Insurance Company, and all the acts of said Attorney are hereby ratified and confirmed.

This power of attorney is signed and sealed by facsimile under and by the authority of the following resolution adopted by the Directors of The National Grange Mutual Insurance Company at a meeting duly called and held on the 2nd day of December 1977.

Voted: That the signature of any officer authorized by the By-Laws and the company seal may be affixed by facsimile to any power of attorney or special power of attorney or certification of either given for the execution of any bond, undertaking, recognizance or other written obligation in the nature thereof; such signature and seal when so used being hereby adopted by the company as the original signature of such office and the original seal of the company, to be valid and binding upon the company with the same force and effect as though manually affixed.

By execution of this Power of Attorney, National Grange Mutual Insurance Company does hereby revoke, rescind and declare null and void any previous Power of Attorney at any time previously furnished to the aforesaid individuals or agencies.

*IN WITNESS WHEREOF*, The National Grange Mutual Insurance Company has caused these presents to be signed by its Corporate Secretary and its corporate seal to be hereto affixed this 6th day of March, 2003. **THIS APPOINTMENT SHALL CEASE TERMINATE AUTOMATICALLY AS OF DECEMBER 31ST, 2006, unless sooner revoked as provided.**

NATIONAL GRANGE MUTUAL INSURANCE COMPANY BY

**THIS POWER IS INVALID IF RED DIAGONAL IMPRINT " NATIONAL GRANGE MUTUAL INSURANCE COMPANY, KEENE, NEW HAMPSHIRE " IS NOT SHOWN IN ITS ENTIRETY.**

NATIONAL GRANGE MUTUAL INSURANCE COMPANY INCORPORATED 1923 KEENE, N.H.

State of New Hampshire, County of Cheshire

On this 6th day of March, 2003, before the subscriber a Notary Public of the State of New Hampshire in and for the County of Cheshire duly commissioned and qualified, came William C. McKenna of the National Grange Mutual Insurance Company, to me personally known to be the officer described herein, and who executed the preceding instrument, and he acknowledged the execution of same, and being by me fully sworn, deposed and said that he is an officer of said Company, aforesaid: that the seal affixed to the preceding instrument is the corporate seal of said Company, and the said corporate seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Company; that Article V, Section 2 of the By-Laws of said Company is now in force.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed by official seal at Keene, New Hampshire this 6th day of March, 2003.

66

SUSAN M. FORTINI NOTARY PUBLIC NEW HAMPSHIRE

**Notary Public**
**My Commission Expires: May 13, 2003**

I Lyn E. Landry, Assistant Vice President of the National Grange Mutual Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by said Company which is still in force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Company at Keene, New Hampshire this 1st day of December, 2003

**Assistant Vice President**

68-N882 003 brittons

**WARNING** — Any unauthorized reproduction or alteration of this document is prohibited. This power is void unless seals are readable and the certification seal at the bottom is **embossed**. The diagonal imprint, warning and confirmation must be in red ink.

**CONFIRMATION** Of validity of attached bond, call NGM at: Keene 603-358-1339; Richmond 804-270-6611 ext. 138; Syracuse 315-434-1410.

National Grange Mutual Insurance Company Keene New Hampshire