# AMERICAN ARBITRATION ASSOCIATION
# CONSTRUCTION INDUSTRY ARBITRATION RULES
# DEMAND FOR ARBITRATION

MEDIATION: *If you want the AAA to contact the other party and attempt to arrange a mediation, please check this box.* ☐

| | |
|---|---|
| TO: Name of Respondent # 1<br>**North East Mechanical Corp.** | Name of Representative:<br>(unknown) |
| Address<br>**6 Green Hollow Road** | Address |
| City: **Moosup** / State: **CT** / Zip Code: **06354** | City / State / Zip Code |
| Phone No.: **(860) 564-4050** / Fax No.: **(860) 564-4516** | Phone No. / Fax No. |
| TO: Name of Respondent # 2<br>**National Grange Mutual Insurance Company** | Name of Representative:<br>**Patricia A. Buckley**<br>**Carroll, Kelly & Murphy, Counsellors at Law** |
| Address<br>**55 West Street, P.O. Box 2300** | Address<br>**One Turks Head Place, Suite 400** |
| City: **Keene** / State: **NH** / Zip Code: **03431** | City: **Providence** / State: **RI** / Zip Code: **02903** |
| Phone No. / Fax No. | Phone No.: **(401) 331-7272** / Fax No.: **(401) 331-4404** |
| TO: Name of Respondent # 3<br>**Gem Mechanical Services, Inc. f/k/a Gem Plumbing and Heating Co., Inc.** | Name of Representative:<br>**Everett A. Petronio, Jr., Esq.**<br>**Law Offices of Everett A. Petronio, Inc.** |
| Address<br>**One Wellington Road** | Address<br>**1239 Hartford Avenue, P.O. Box 19040** |
| City: **Lincoln** / State: **RI** / Zip Code: **02865** | City: **Johnston** / State: **RI** / Zip Code: **02919** |
| Phone No. / Fax No. | Phone No.: **(401) 273-8800** / Fax No.: **(401) 273-1907** |

THE NAMED CLAIMANT, A PARTY TO A WRITTEN AGREEMENT DATED **July 13, 2003** PROVIDING FOR ARBITRATION UNDER THE CONSTRUCTION INDUSTRY ARBITRATION RULES, HEREBY DEMANDS ARBITRATION THEREUNDER. (ATTACH THE ARBITRATION CLAUSE.) **See Exhibits ## 2, 3, and 4, ¶ 21.2.**

NATURE OF DISPUTE (Please give enough details to enable the AAA to select arbitrators with appropriate experience.):
**See Supplemental Demand for Arbitration, Exhibit #1**

| | |
|---|---|
| DOLLAR AMOUNT OF CLAIM:<br>**See Supplemental Demand for Arbitration, Exhibit #1** | OTHER RELIEF SOUGHT:<br>**See Supplemental Demand for Arbitration, Exhibit #1** |

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
**Familiarity with construction law.**

CLAIMANT IS:
☐ Owner ☐ Design Professional (specify ____________) ☑ Contractor
☐ Subcontractor (specify ____________) ☐ Other (Specify ____________)

RESPONDENT IS:
☐ Owner ☐ Design Professional (specify ____________) ☐ Contractor
☑ Subcontractors (Plumbing, Heating, and other mechanical) ☑ Other (Surety)

ESTIMATED TIME NEEDED FOR HEARINGS OVERALL: **3 days**

Copies of this demand are being filed with the American Arbitration Association at its **Minneapolis** office. Claimant requests that the AAA commence the administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

CLAIMANT REQUESTS THAT ARBITRATION HEARINGS BE HELD AT THE FOLLOWING LOCALE: **Minneapolis, MN. Pursuant to the parties' arbitration provisions (see Exhibits ##2, 3, and 4), the arbitration hearing is required to be held in Minneapolis, MN.**

**EXHIBIT E**

| Signature (may be signed by a representative) | Title | Date |
|---|---|---|
| [signature] | Attorney | March 17, 2006 |

| Name of Claimant | | | Name of Representative | | |
|---|---|---|---|---|---|
| M. A. Mortenson Company | | | Timothy M. O'Brien, Faegre & Benson LLP<br>James J. Hartnett, IV, Faegre & Benson LLP<br>Nathan A. Brennaman, Faegre & Benson LLP | | |
| Address<br>700 Meadow Lane North, P.O. Box 710 | | | Address<br>2200 Wells Fargo Center, 90 South Seventh Street | | |
| City<br>Minneapolis | State<br>MN | City<br>Minneapolis | State<br>MN | City<br>Minneapolis | State<br>MN |
| Phone No.<br>(763) 287-5608 | Fax No.<br>(763) 287-5624 | | Phone No.<br>(612) 766-7000 | Fax No.<br>(612) 766-1600 | |

**TO INSTITUTE PROCEEDINGS, PLEASE SEND THREE COPIES OF THIS DEMAND AND THE ARBITRATION AGREEMENT, WITH THE FILING FEE, AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.**

M2:20776300.03

**AMERICAN ARBITRATION ASSOCIATION**

**Construction Industry Arbitration Rules**

---

In the Matter of the Arbitration Between

M. A. Mortenson Company,

Claimant,

**SUPPLEMENTAL DEMAND FOR ARBITRATION**

and

North East Mechanical Corp.; National Grange Mutual Insurance Company; Gem Mechanical Services, Inc. f/k/a Gem Plumbing and Heating Co., Inc.

Respondents.

---

Claimant, for its Supplemental Demand for Arbitration, states and alleges as follows:

**Parties**

1. Mortenson is a general contractor.

2. North East is a mechanical subcontractor under subcontracts with Mortenson.

3. National Grange is a surety, which served as surety for North East and issued payment and performance bonds in favor of Mortenson.

4. Gem Mechanical Services, Inc. f/k/a Gem Plumbing & Heating Co., Inc. ("Gem"), is a mechanical subcontractor hired as a replacement contractor by National Grange as a consequence of the breaches and defaults of North East of its subcontracts.

**Background**

5. Mortenson entered into a contract with the Department of the Navy ("Navy") for repairs and alterations to three buildings at the Newport Naval Station in Newport, Rhode Island (the "Projects").

6. Mortenson entered into three separate subcontract agreements with North East, dated as follows: July 13, 2003, for Building 360 (the 360 Subcontract); November 17, 2003 for Building W36 (the "W36 Subcontract"); and November 17, 2003 for Building 347 (the "347 Subcontract"); (collectively, the "Subcontracts," attached hereto as Exhibit Nos. 2, 3, and 4).



EXHIBIT 01

Under each of the Subcontracts, North East was to provide and install plumbing, heating and air conditioning in each of the respective Projects.

7. As required by each of the Subcontracts, North East, as principal, obtained payment and performance bonds from National Grange, as surety, for the benefit of Mortenson, as obligee. For the 360 Subcontract, North East obtained payment and performance bonds No. S240124, in the amount of $850,000.00 (the "360 Bonds"). For the W36 Subcontract, North East obtained payment and performance bonds No. S240130, in the amount of $585,000.00 (the "W36 Bonds"). For the 347 Subcontract, North East obtained payment and performance bonds No. S240131 in the amount of $545,000.00 (the "347 Bonds") (collectively, the "Bonds," see Exhibit Nos. 5, 6, and 7).

8. The Subcontracts between Mortenson and North East each provide, *inter alia*, as follows:

> 1.3 Subcontractor binds itself to Mortenson under this Agreement with respect to Subcontractor's Work in the same manner as Mortenson is bound to Owner under the Contract Documents.
>
> 2. Subcontractor shall furnish and pay for all supervision, labor, materials, tools, equipment, services, scaffolds, appliances and all other items necessary to fully perform this Subcontract, consistent with the provisions of the Contract Documents....
>
> 6.1 Subcontractor shall begin Work as soon as the Project is ready for Work or, within 3 calendar days after being notified in writing by Mortenson, and shall prosecute and complete the Work in accordance with the construction schedule, as such may be from time to time revised.
>
> 7.3 Monthly progress payments (less retainage) shall be made to Subcontractor within seven (7) days after Mortenson's receipt of payment from Owner, so long as Subcontractor is not in default or breach of this Subcontract and is not subject to other reasons for withholding. . . . Subcontractor shall not be entitled to payment to the extent there is: (a) any indebtedness owed by Subcontractor to Mortenson; (b) defective Work not remedied or defective materials not removed and replaced; (c) third party claims; (d) claimed failure of Subcontractor to make payments to its subcontractors, suppliers or laborers; (e) reasonable doubt that the Work can be completed for the unpaid balance of the Subcontract Price; (f) damage to Mortenson or another contractor or subcontractor; (g) unsatisfactory or untimely prosecution of the Work by Subcontractor; or (h) failure of Subcontractor to comply with the Contract Documents.
>
> 8.1 Subcontractor shall perform the Work in a diligent, efficient and skillful manner, as the Work or any portion thereof becomes available, to allow Mortenson to promote the general progress of the entire construction and so that Subcontractor's Work shall not interfere, hinder or delay other work.

8.2 Should Subcontractor delay the progress of the Work or of the Project, Subcontractor shall take necessary action to meet and maintain job progress, without additional compensation, and shall be liable to and reimburse Mortenson for damages resulting from such delay.

13.1 Mortenson, Architect, Owner and their authorized representatives shall have the right to inspect and test the work and the components thereof at all times and places to verify compliance with the Contract Documents and standards of good workmanship.

13.4 Within twenty-four (24) hours after receiving written notice from Mortenson that Work has been rejected by Mortenson or Architect as defective or in any way failing to comply with the Contract Documents, Subcontractor, at its own expense shall remove all portions of such Work from premises and shall replace the same with conforming Work and make good all work of others damaged or destroyed by or as a result of such defective, or non-conforming Work or by removal or replacement thereof.

14.1 Should Subcontractor at any time: . . . (c) fail to supply sufficient skilled workers, equipment or materials of proper quality and quantity; (d) fail to make timely payments for labor or materials; (e) fail to proceed with the Work in the sequence directed by Mortenson; (f) fail to prosecute the Work with promptness and diligence; (g) cause stoppage, delay or interference to work of Mortenson or any other contractor or subcontractor; (h) fail to perform the Work in compliance with the Contract Documents;...then in any of such events, each of which shall constitute a default of Subcontractor, Mortenson shall have the right, to the extent permitted by law, and in addition to any other rights and remedies provided by the Contract Documents or by law, after seventy-two (72) hours written notice to Subcontractor mailed or delivered to its last known address, (i) to perform (through itself or through others) any uncompleted part of the Work and to deduct the cost thereof from any monies due or to become due to Subcontractor under this Subcontract or (ii) to terminate employment of Subcontractor for all or any portion of the Work, enter upon the premises and take possession of all materials, equipment, scaffolds, tools, and other items thereon, all of which Subcontractor hereby transfers, assigns and sets over to Mortenson for the purpose of completing the Work, and to employ persons as necessary to complete the Work and to provide all labor, services, materials, equipment and other items required therefor.

14.2 In case of termination, Subcontractor shall not be entitled to receive any further payment under this Subcontract until the Work shall be wholly completed to the satisfaction of Mortenson, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the cost incurred by Mortenson in completing the Work, such excess shall be paid by Mortenson to Subcontractor, but if such cost shall exceed such unpaid balance, then Subcontractor shall pay the difference to Mortenson. Such costs shall include the cost of completing the Work in conformance with the Contract Documents and of performing and furnishing all labor, services, materials, equipment, and other items required therefor, and also all losses, damages, costs and

expense, including legal fees and disbursements incurred by reason of or resulting from Subcontractor's default.

9. Additionally, the Subcontracts all provide for arbitration at Mortenson's sole discretion, as follows:

> 21.2 If the Contract Documents do not provide for Arbitration and if Mortenson, in its sole discretion, elects to demand Arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Subcontract, including breach thereof, shall be decided by Arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise. Arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

10. The 360 Subcontract is incorporated into, and made a part of, the 360 Bonds by the express terms of the 360 Bonds. The W36 Subcontract is incorporated into, and made a part of, the W36 Bonds by the express terms of the W36 Bonds. The 347 Subcontract is incorporated into, and made a part of, the 347 Bonds by the express terms of the 347 Bonds.

## Basis of the Dispute

### 360 Subcontract

11. North East breached the 360 Subcontract by: (1) failing to supply sufficient skilled workers, equipment, and materials of proper quality and quantity; (2) failing to provide adequate, qualified supervision and coordination of its work; (3) failing to make timely payments for materials; (4) failing to prosecute the work with promptness and diligence; (5) causing stoppage, delay, and interference to work of Mortenson and other subcontractors; and (6) failing to develop and follow a reasonable plan of action to complete the Project.

12. As a consequence, by letter dated December 30, 2004, Mortenson notified North East that North East was in breach and default of the 360 Subcontract. Notwithstanding such notice, North East failed to address and correct its breach and default within the time specified in the 360 Subcontract.

13. On January 11, 2005, Mortenson notified National Grange of the default of North East and called upon National Grange to promptly remedy North East's default, complete the 360 Subcontract, or otherwise honor the 360 Bonds.

14. In mid-to-late January, 2005, Gem, in the capacity of a replacement contractor hired by National Grange, took over the contractual obligations of North East and began performance of the remaining work to complete the Project in accordance with the terms of the 360 Subcontract, all of such undertakings being done with the full knowledge and consent of National Grange and North East.

15. Thereafter, North East and Gem failed and refused to perform the remaining work under the 360 Subcontract and failed and refused to complete the 360 Subcontract by: (1) failing to provide adequate, qualified supervision for coordination of its work and that of its subcontractors; (2) failing to prosecute the work with promptness and diligence; and (3) failing to develop and follow a reasonable plan of action to complete the Project.

16. Despite demand, National Grange has failed to promptly remedy the defaults of North East and/or Gem, complete the 360 Subcontract, or otherwise honor the 360 Bonds.

17. Mortenson has expended sums in excess of $100,000.00 as a consequence of the respective defaults of North East, Gem, and National Grange.

18. North East and National Grange, under the 360 Subcontract and the 360 Bonds, are each liable to Mortenson for all costs incurred or to be incurred by Mortenson as a consequence of their breach and default of the 360 Subcontract, and additionally are each liable to Gem for all sums, if any, owed to Gem, whether Gem is a replacement contractor hired by National Grange, a subcontractor of North East as asserted by National Grange, or a contractor that took over the obligations of North East under the 360 Subcontract as asserted by Gem.

**W36 Subcontract**

19. North East breached the W36 Subcontract by: (1) failing to provide adequate, qualified supervision and coordination of its work; (2) failing to prosecute the work with promptness and diligence; (3) causing stoppage, delay, and interference to work of Mortenson and other subcontractors; and (4) failing to develop and follow a reasonable plan of action to complete the Project.

20. As a consequence, by letter dated March 18, 2005, Mortenson notified North East that North East was in breach and default of the W36 Subcontract. Notwithstanding such notice, North East failed to address and correct its breach and default within the time specified in the W36 Subcontract.

21. On March 23, 2005, Mortenson notified National Grange of the default of North East and called upon National Grange to promptly remedy North East's default, complete the W36 Subcontract, or otherwise honor the W36 Bonds.

22. In March of 2005, Gem, in the capacity of a replacement contractor hired by National Grange, took over the contractual obligations of North East and began performance of the remaining work to complete the Project in accordance with the terms of the W36 Subcontract, all of such undertakings being done with the full knowledge and consent of National Grange and North East.

23. Thereafter, North East and Gem failed and refused to perform the remaining work under the W36 Subcontract and failed and refused to complete the W36 Subcontract by: (1) failing to provide adequate, qualified supervision for coordination of its work and that of its subcontractors; (2) failing to prosecute the work with promptness and diligence; and (3) failing to develop and follow a reasonable plan of action to complete the Project.

24. Despite demand, National Grange has failed to promptly remedy the defaults of North East and/or Gem, complete the W36 Subcontract, or otherwise honor the W36 Bonds.

25. Mortenson has expended sums in excess of $75,000.00 as a consequence of the respective defaults of North East, Gem, and National Grange.

26. North East and National Grange, under the W36 Subcontract and the performance bond, are each liable to Mortenson as a consequence of their breaches and default for all costs incurred or to be incurred by Mortenson in the performance of the W36 Subcontract, and additionally are each liable to Gem for all sums, if any, owed to Gem, whether Gem is a replacement contractor hired by National Grange, a subcontractor of North East as asserted by National Grange, or a contractor that took over the obligations of North East under the W36 Subcontract as asserted by Gem.

**347 Subcontract**

27. North East breached the 347 Subcontract by: (1) failing to provide adequate, qualified supervision and coordination of its work; (2) failing to prosecute the work with promptness and diligence; (3) causing stoppage, delay, and interference to work of Mortenson and other subcontractors; and (4) failing to develop and follow a reasonable plan of action to complete the Project.

28. As a consequence, by letter dated March 8, 2005, Mortenson notified North East that North East was in breach and default of the 347 Subcontract. Notwithstanding such notice, North East failed to address and correct its breach and default within the time specified in the 347 Subcontract.

29. On March 23, 2005, Mortenson notified National Grange of the default of North East and called upon National Grange to promptly remedy North East's default, complete the 347 Subcontract, or otherwise honor the 347 Bonds.

30. In March of 2005, Gem, in the capacity of a replacement contractor hired by National Grange took over the contractual obligations of North East and began performance of the remaining work to complete the Project in accordance with the terms of the 347 Subcontract, all of such undertakings being done with the full knowledge and consent of National Grange and North East.

31. Thereafter, North East and Gem failed and refused to perform the remaining work under the 347 Subcontract and failed and refused to complete the 347 Subcontract by: (1) failing to provide adequate, qualified supervision for coordination of its work and that of its subcontractors; (2) failing to prosecute the work with promptness and diligence; and (3) failing to develop and follow a reasonable plan of action to complete the Project.

32. Despite demand, National Grange has failed to promptly remedy the defaults of North East and/or Gem, complete the 347 Subcontract, or otherwise honor the 347 Bonds.

33. Mortenson has expended sums in excess of $60,000.00 as a consequence of the respective defaults of North East, Gem, and National Grange.

34. North East and National Grange, under the 347 Subcontract and the performance bond are each liable to Mortenson as a consequence of their breaches and default for all costs incurred or to be incurred by Mortenson in the performance of the 347 Subcontract, and additionally are each liable to Gem for all sums, if any, owed to Gem, whether Gem is a replacement contractor hired by National Grange, a subcontractor of North East as asserted by

National Grange, or a contractor that took over the obligations of North East under the 347 Subcontract as asserted by Gem.

**Relief Requested**

35. Mortenson requests that this arbitration panel determine that North East, as principal, and National Grange, as surety, are each liable to Mortenson for the defaults of North East and Gem and are further liable to Mortenson for all costs incurred or to be incurred by Mortenson in performance of the Subcontracts. Additionally, Mortenson requests that this arbitration panel determine that North East and National Grange are liable for all sums, if any, due and owing to Gem. Finally, Mortenson requests the Arbitration Panel to direct National Grange and North East to proceed to discharge all of their respective Payment and Performance Bond obligations, to perform remaining punchlist obligations, and to fulfill the warranty obligations under the Subcontracts.

36. Mortenson further requests that the claims of North East, National Grange, and Gem, if any, arising out of or relating to the Subcontracts, the Payment and Performance Bonds, and the Projects be resolved in this arbitration proceeding.

Dated: March 17, 2006

FAEGRE & BENSON LLP

Timothy M. O'Brien, # 80640
Jim Hartnett, # 238624
Nathan Brennaman, #331776
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
**ATTORNEYS FOR CLAIMANT**
**M. A. MORTENSON COMPANY**

M2:20776283.05